[No. 1500.]

HENRY COFFEY *v.* THE STATE.

MURDER IN THE SECOND DEGREE—EVIDENCE.—See the statement of the case for evidence held sufficient to sustain a conviction for murder in the second degree. The rulings in *Neyland* v. *The State, ante,* page 536, referred to with approval.

APPEAL from the District Court of Cass. Tried below before the Hon. B. T. Estes.

The indictment charged the appellant with the murder of Paul Pooler, in Cass county, Texas, on the second day of December, 1882. His trial resulted in his conviction of murder in the second degree, and he was awarded a term of five years in the penitentiary as punishment.

R. W. Brownell was the first witness called by the State. He testified in substance that he was present at the difficulty between the defendant and the deceased, which culminated in the death of the latter. It occurred at Cole Walker's store, in Cass county, Texas, on the night of December 2, 1882. Cole Walker's store is situated on the road which leads from the town of Linden to Jefferson, about six miles distant from Linden. The store house sits east and west, with the entrance door in the east end. It is about eighteen feet long by sixteen feet wide, and has a counter about sixteen feet long running lengthwise the house, on the south side. The defendant, the deceased and several others were in the house on the night of the killing, engaged in playing a game of dice on the counter. The game was being played at a point on the counter between its west end and the centre. The position of the witness at the time the blow was

struck, and that of Warren Bynum, with whom he was talking at the time, was near the front door at the east end of the house. The defendant Coffey was behind the counter, and the deceased, Pooler, was in front, leaning his right arm on the counter and facing the defendant. The defendant, after a short time, walked from behind the counter, passing around its east end, near where the witness and Bynum were standing. At the same time the deceased straightened up, stepped back from the counter about two feet, and advanced towards the door about the same distance and stopped. After passing from behind the counter at its east end, the defendant walked down the room towards its west end, facing the deceased. When they met, the witness saw the defendant strike the deceased with a seasoned hickory stick. The stick was a crooked-handled hickory walking-stick, about three feet long and about one inch in diameter. The witness could not say positively that the deceased was or was not advancing towards the defendant when the latter struck him.

In striking, the defendant held the stick with both hands, at about its centre. The blow did not knock the deceased down, nor did it even stagger him. He stood perfectly erect after he received the blow. He said nothing that the witness heard, nor did the witness hear the defendant say anything just before or at the time he struck the deceased. The witness saw blood flowing from the wound inflicted by the blow. The deceased had on an overcoat with a cape attached, at the time, and the witness could not see his hands. The defendant made no effort to strike the deceased a second blow. Nixon caught the defendant after he struck, and the deceased went out of the store with Forrest Jones. He, the deceased, returned into the store after a few minutes, still bleeding from the wound. As he re-entered the store, the defendant, who had his hand in his pocket at the time, said to the deceased: "If that does not satisfy you, I will cut your d—d throat." The deceased at this time was advancing towards the defendant.

The blow fell on the left side of the head of the deceased, near the top, and inflicted a wound an inch and a half long, which bled freely. The deceased remained at the store some fifteen or twenty minutes, when some of his friends put him on his horse and he rode off. The defendant is a white man; the deceased was a negro.

Forrest Jones was the second witness called by the State. He testified in substance that he was at Cole Walker's store on the

night of December 2, 1882, and saw the difficulty between the
defendant and the deceased.   A game of dice was being played
by the defendant, who was standing behind the counter, and the
deceased and others who were standing in front of the counter
and facing the defendant.   The witness, who had been standing
near the door, was just going to take a hand in the game when
he heard the defendant tell the deceased that he had not "put
up " his two bits.   The deceased replied that he had "put up."
The defendant again said that he had not, and again the de-
ceased replied that he had.   The defendant then warned the de-
ceased not to dispute his word again, and again the deceased
replied that he had "put up."   Thereupon the defendant walked
from behind the counter, down the room, and, meeting the de-
ceased a few feet from where he originally stood, struck him,
deceased, over the head with a stick.   He, defendant, used a
crooked-handled hickory walking-stick, and in striking held it
near the small end, striking with the heavy crooked end.   The
blow fell on the left side of the deceased's head, near the top, but
did not knock him down.   It inflicted a wound about one and a
half inches long.

After he was struck, the deceased went out of the store with
the witness and some others, but, as the wound continued to
bleed profusely, they returned to the store in a few minutes to
examine the wound by the light.   As they entered the store, the
witness heard the defendant say to the deceased:   "D—n you,
if you are not satisfied, I will take out my knife and cut your
throat!"   He did not see the defendant make any effort to cut
the deceased.   The defendant struck the deceased but once, and,
though Mr. Nixon caught hold of him, defendant, he made
no effort to strike the second time.   The deceased remained
about the store some fifteen or twenty minutes after he was
struck.   At the end of that time, the witness, Henry Smith and
Jake Whetstone, took him to the house of an old colored man
known as Uncle Sam, about one hundred yards distant, and
dressed his wounds, and then started on home with him.   The
deceased was so severely wounded that he had to be assisted
when mounting his horse.   The witness, Whetstone and Smith
walked along behind his horse.   After riding about a half of a
mile, the deceased became unable to ride further, and he was
taken from his horse, and carried and dragged by his attend-
ants until they reached the house of a Mr. Mason, about a half
mile farther on.   The party roused Mr. Mason, and told him that

they thought Paul Pooler, the deceased, was dead or dying. Mr. Mason came out, and they found the deceased speechless. He died a few minutes later.

Cross-examined, the witness in reply to a question stated that the deceased did not fall from his horse, nor did his horse throw him at any time after leaving the store, and before Mason's house was reached. The deceased was not drunk at the time he was struck. He, the deceased, the witness and Whetstone had drank but one bottle of cordial that night. He saw the deceased take but one drink that night. The witness denied that he told Mason, when they reached his house with the deceased that night, that the deceased's horse had thrown him after they left Cole Walker's store.

Warren Bynum, testifying for the State, narrated the particulars of the difficulty in almost the exact words employed by the witness Brownell. He added that he thought the deceased was drinking somewhat that night.

Henry Smith, the fourth witness for the State, testified in substance that he was about the premises of Cole Walker, but not in the store when the deceased was struck. He, together with Forrest Jones and Jake Whetstone, got the deceased on his horse after he was hurt and took him to Uncle Sam's house, about one hundred yards distant from the store. After they dressed his wounds they put him on his horse again, and started home with him. They had gone perhaps a half mile when the horse ridden by the deceased wheeled around very suddenly as though he was frightened. The deceased fell from his horse, but was caught by Whetstone, Jones and the witness before he struck the ground. Whetstone, Jones and the witness then carried and dragged him to Mason's place. Whetstone went into Mason's house, woke him up and asked him to go down the road to where the deceased was, saying that the deceased was believed to be dying. Mr. Mason went to the place where the deceased lay, and had fires built around him. The deceased died a few minutes later.

Cross-examined, the witness stated that the horse did not throw the deceased, nor did the deceased fall from his horse between Cole Walker's store and Mr. Mason's place. The witness denied that he told Mr. Mason on that night that the horse threw the deceased, or that the deceased fell from his horse after leaving the store.

Jake Whetstone was the next witness introduced by the State.

He related the incidents of the dispute, and its results, exactly as they were related by the witness Forrest Jones. He stated in addition that after he, Jones and Smith had taken the deceased about a half mile on his way home, he, the witness, felt the pulse of the deceased, and discovered that he could ride no further, and so took him down from his horse, and carried and dragged him to Mr. Mason's. When they reached Mason's the witness went on for additional help, and when he returned he found Pooler dead.

G. W. Taylor testified that he was one of the jury of inquest which viewed the body of the deceased, on the morning of December 3, 1882, at a point near Ed. Mason's house, on the Linden and Jefferson road. The wound was a gash on the head of the deceased, about one and a half inches long. The witness stripped and examined the body, but found no other external wounds. He saw that the skull was fractured. He did not know whether or not there were internal wounds. He did not know whether or not the neck was broken. He had seen wounds and skull fractures which appeared more severe than that on the head of the deceased which did not prove fatal. Doctor Oliver examined the wound.

Doctor A. J. Oliver testified that he was a practicing physician, and as such was called to examine the dead body of Paul Pooler, on the morning of December 3, 1882. He found the body in charge of the jury of inquest, near the road leading from Linden to Jefferson, and about five miles distant from Linden. He examined the body, and found a wound near the top and on the left side of the head, about one and a half inches in length. He found two fractures of the skull, but no depression. The wound the witness believed to have caused death. Death might have been produced by concussion or effusion, but not by depression. The witness had seen wounds of more severe appearance which did not prove fatal, but each case of the kind was controlled by surrounding circumstances. The wound in this case appeared to have been inflicted with a stick. The witness made no further examination, and did not know whether or not the neck of the deceased was broken, or whether he had sustained internal injuries. The State closed.

Charles Cole was the first witness introduced by the defense. He testified that he was present at the time of the difficulty. The defendant, the deceased and several other parties were engaged in a game of dice, the defendant standing behind the

counter, and the deceased in front, leaning on it with his arm. The witness heard the defendant tell the deceased that he had not "put up" his quarter. The deceased replied that he had. The dispute continued until the defendant told the deceased not to dispute his word again. The deceased thereupon straightened up from the counter, threw his coat back and put his hand in his pocket, and, standing erect, again said that he had "put up" his quarter. The defendant called to Forrest Jones, who was then standing near the door, to prove that the deceased had not "put up." The defendant started down the counter towards Jones, calling on Jones to prove that the deceased had not "put up." The witness next observed the defendant when he met the deceased about seven feet from the door. He saw him strike the deceased over the head with a stick about one inch in diameter. As he struck the deceased, the defendant remarked: "No d—d negro can dispute my word and come at me with his hand in his pocket." The blow staggered the deceased, but did not knock him down. The deceased looked and acted in a very angry manner, and when he disputed the defendant's word the last time, stepping back and running his hand in his pocket, he muttered something which the witness could not understand. The deceased had won a pistol a short time before this difficulty, but the witness did not know whether or not he had it with him on this occasion. The witness heard the defendant say, shortly after he struck the blow, that he would not have struck the deceased if the deceased had not come towards him with his hand in his pocket, disputing his word.

Frank McAlexander, the second witness for the defense, testified almost in the same language used by the witness Cole. He located himself behind the counter near the defendant while the game of dice was going on, and emphasized his account of the incidents of the night. According to his testimony the deceased had won a thirty-two calibre pistol at a raffle but a few minutes before the dispute began. He stated also that the defendant and the deceased were moving towards each other when the blow was struck, the deceased with his right hand in his pocket.

On cross-examination, the witness stated that no one won the pistol at a raffle subsequent to that at which the deceased won it. The deceased was the last person to win it. In fact it was raffled but once that night.

Ed. Mason testified, for the defense, that late on Saturday night, December 2, 1882, he was aroused from sleep by three negroes

known as Forrest Jones, Jake Whetstone and Henry Smith, and informed by them that Paul Pooler was out on the road dying. The witness went to where the deceased was lying, and after examining him concluded that he was very drunk, and nearly frozen. He had fires built around him, and tried to administer restoratives, but could not get him to swallow anything. The witness detected in his breath a very strong smell of whisky or other intoxicating liquid. The deceased died shortly after the witness reached him. Jake Whetstone left to get additional help to take the deceased home, and Henry Smith and Forrest Jones remained with him. The witness asked them for an account of the casualty. They replied that they were walking along behind the deceased, who was riding, and that, coming up to him in the road, they found that he had either fallen from his horse or his horse had thrown him and run off, and that they carried and dragged him to where he was.

William Crow testified, for the defense, that he was at the dead body of Pooler near Mr. Mason's, and heard Henry Smith and Forrest Jones tell Mr. Mason that the deceased either fell from his horse or the horse threw him, after he left Walker's store.

Forrest Jones, Jake Whetstone and Henry Smith, re-examined, testified that Ike Smith won the pistol spoken of by the witness for the defense, after the deceased won it, and was the last person to win it that night. The deceased had no pistol on his person when he died.

G. W. Taylor testified, for the State, that there was no pistol about the deceased at the time the inquest was held.

Pleas Stone, John P. Lockett and Robert Partain testified that they were acquainted with the reputation of the defendant as a quiet, peaceable citizen, in the community in which he lived, and that his reputation as such was good.

The motion for new trial set up that the charge of the court was erroneous in many respects, both as regarded the propositions of law which it submitted, and in the failure to submit those which were called for by the evidence adduced on the trial. It alleged that the instructions were, in part, a charge upon the weight of the evidence, and it arraigned the verdict as unsupported by law or evidence.

*O'Neal & Son*, for the appellant.

*J. H. Burts*, Assistant Attorney General, for the State.

HURT, J.   The conviction in this case is for murder of the second degree.   The facts warrant the verdict.

The defendant cannot complain of the charge of the court. It is as fair and·favorable to him as under the facts he had a right to expect or demand, and a fair and impartial trial was had.

There is no question involved worthy of discussion except that which is now settled in *Neyland* v. *The State*, decided at the present term, *ante,* page 536.

The judgment is affirmed.

*Affirmed.*

Opinion delivered March 17, 1883.